## In re Anonymous Nos. 25 D.B. 89 and 71 D.B. 89

Disciplinary Board Docket no. 25 D.B. 89 and 71 D.B. 89.

LIEBER, *Member,* February 4, 1991—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your hon-

orable court with respect to the above-captioned petitions for discipline.

## HISTORY OF PROCEEDINGS

This matter is a consolidation of two petitions for discipline brought by the Office of Disciplinary Counsel charging respondent with a pattern of professional misconduct involving neglect, misrepresentation, failure to properly and promptly pursue legal matters entrusted to him, and failure to return clients' property upon request.

On March 28, 1989, the Office of Disciplinary Counsel filed a four-count petition for discipline at no. 25 D.B. 89, charging respondent with violations of the following Disciplinary Rules and Rules of Professional Conduct:

D.R. 1-102(A)(4)—dealing with a lawyer engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation;

D.R. 1-102(A)(6)—dealing with conduct that adversely reflects on a lawyer's fitness to practice law;

D.R. 6-101(A)(3)—dealing with a lawyer neglecting a legal matter entrusted to the lawyer;

D.R. 7-101(A)(1)—dealing with a lawyer intentionally failing to seek the lawful objectives of a client through reasonably available means;

D.R. 7-101(A)(2)—dealing with a lawyer intentionally failing to carry out a contract of employment entered into with a client for professional services;

D.R. 7-101(A)(3)—dealing with a lawyer intentionally prejudicing or damaging a client during the course of the professional relationship;

D.R. 9-102(B)(4)—requiring a lawyer to promptly pay or deliver to a client as requested by the client

the funds, securities or other properties in the possession of the lawyer which the client is entitled to receive;

RPC 1.3—dealing with a lawyer acting with reasonable diligence and promptness in representing a client; and

RPC 1.15(b)—dealing with a lawyer promptly delivering to the client property that the client is entitled to receive.

On July 14, 1989, the Office of Disciplinary Counsel filed a second petition for discipline against respondent at no. 71 D.B. 89 charging him with other violations of Disciplinary Rules 1-102(A)(4), 1-102(A)(6), 6-101(A)(3), 7-101(A)(1), and 7-101(A)(2).

Respondent did not file an answer to either petition for discipline.

The petitions were consolidated for purposes of hearing, and the matter was referred to Hearing Committee [ ], which consisted of [ ]. Respondent advised that he was unable to attend the scheduled prehearing conference due to a court conflict. He later requested a continuance of the hearing date because of another court conflict.

On March 15, 1990, and March 22, 1990, respondent entered into extensive stipulations of fact relating to most of the outstanding issues of fact.

Hearings were held on March 23, 1990, March 29, 1990, and April 11, 1990, during which respondent acted as his own counsel. Respondent testified in narrative form, offered no witnesses, and failed to produce expert medical testimony to support his assertion of mental illness. At the conclusion of respondent's testimony, the hearing committee made a finding that there was sufficient evidence to establish a prima facie violation of a Disciplinary Rule or a Rule of Professional Conduct. The com-

mittee, however, granted respondent's request for a continuance of the hearing in order for him to present the testimony of his psychiatrist. The record remained open until a deposition of respondent's psychiatrist took place on April 11, 1990.

On June 11, 1990, the Office of Disciplinary Counsel filed a brief to the hearing committee requesting that respondent be suspended from the practice of law for a period of at least one year. The hearing committee filed its report on September 6, 1990, recommending a suspension of at least two years.

On September 26, 1990, respondent filed exceptions to the hearing committee report and requested oral argument before the board. A three-member panel of the board was constituted to hear oral argument on October 30, 1990. On October 19, 1990, the Office of Disciplinary Counsel filed a brief opposing respondent's exceptions.

Respondent did not appear for the oral argument, although notice had been repeatedly given pursuant to Disciplinary Board Rule 89.21.[1]

The matter was adjudicated at the November 2, 1990, meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

Subsequently, in a letter to the secretary of the board dated November 28, 1990, respondent contended that he had no notice of the hearing. At the same time, he filed a petition to reopen on limited issue of nature of discipline, in which he requested

---

1. Three letters sent by certified mail to his address of record were returned unclaimed, but a fourth letter sent by first-class mail to the same address was not returned. That address remains respondent's current address of record and appears on his most recent correspondence with the secretary of the board.

reformation of the hearing committee's recommendation for public discipline and proposed instead private discipline with a condition of continued cessation of practice. Petitioner filed a response to petition to reopen case on limited issue on December 20, 1990, urging denial of respondent's request.

At the January 4, 1991, meeting of the Disciplinary Board, the board denied respondent's petition to reopen.

## FINDINGS OF FACT

The board makes the following findings of fact:

(1) The stipulation of the parties at no. 25 D.B. 89 is accepted and incorporated in total as though fully set forth herein.

(2) The stipulation of the parties at no. 71 D.B. 89, is accepted and incorporated in total as though fully set forth herein.

(3) The findings of fact of the hearing committee is accepted and incorporated as follows.

(4) Petitioner, whose principal office is located at 300 North Second Street, Harrisburg, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(5) Respondent, [ ], Esq., was admitted to practice law in the Commonwealth of Pennsylvania in 1979, and his office is located at [ ].

## A. *The Following Findings Apply to the Petition at No. 71 D.B. 89.*

(6) In about late January 1985, respondent was retained, through the [A], a collection agency, to obtain payment of a debt to [B] Corporation.

(7) On March 25, 1985, respondent filed suit in [ ] County on behalf of [B] against the debtors.

(8) On August 27, 1985, respondent advised [A] by letter of a problem in obtaining service of the complaint.

(9) Despite numerous written and telephone requests, the respondent failed to advise his client of the status of the matter until his letter of February 12, 1986, in which he advised that he had resolved the matter of service and that the defendant had offered to return the equipment in exchange for a release.

(10) On March 7, 1986, respondent filed a praecipe to reissue the complaint and a hearing was scheduled for September 3, 1986, which respondent did not attend.

(11) Despite numerous requests for information, respondent did not take further action until October 20, 1986, when he wrote to the client advising that a hearing was scheduled and that witnesses would be required although, in fact, no hearing had been scheduled.

(12) Respondent did not reply to the client's letter of October 27, 1986, responding to his letter of October 20, until January 2, 1987, when he wrote to the client advising that a hearing was scheduled for March 31, 1987. In fact, no such hearing was scheduled.

(13) On June 1, 1987, the client wrote respondent concerning the outcome of the March 31 hearing, and on July 24, 1987, respondent advised the client,

in writing, that the March 31 hearing had been "continued."

(14) On September 30, 1987, respondent was requested by the client to deliver the equipment by October 9, 1987, or consider himself discharged. On October 9, 1987, respondent was advised by letter to return the documents in anticipation of another firm being retained to pursue the matter.

(15) On November 12, 1987, respondent requested, in writing, that he be given until November 18, 1987, to return the equipment, which request was granted.

(16) That despite a telephone conversation on March 15, 1988, relative to the equipment, respondent did not obtain or forward the equipment, which was the subject of the lawsuit, and the matter was concluded by other counsel.

### B. *The Following Findings Apply to the Petition at No. 25 D.B. 89*

### *Charge I*

(17) In or about March 1984, respondent was retained by [C] of [D] Inc., (a collection agency), to handle a collection matter for [ ] Corporation/[ ] Leasing against [E].

(18) The client advanced costs and respondent filed a complaint against the debtor, [E], on September 4, 1984, which was duly served.

(19) That although Ms. [E] failed to file an answer to the complaint, respondent did not take a default judgment.

(20) Respondent, by letter dated May 1, 1985, advised the client of the service of the complaint and that a hearing on the matter was scheduled for June 27, 1985.

(21) That respondent failed to attend the June 27 hearing and the case was dismissed with prejudice. In July, respondent advised his client that he had obtained a default judgment in the matter.

(22) From July 1985 until July 1987, respondent was repeatedly requested to send documentation evidencing the default judgment, during which period respondent continued to represent that a default judgment was obtained. In fact, no default judgment existed.

(23) Between July 27, 1987, and January 1988, respondent communicated various offers of settlement which he had allegedly received from Ms. [E] when, in fact, he had not had any discussions with Ms. [E].

(24) That from the period March 19, 1988, through June 9, 1988, respondent represented that he had received varying amounts of money from Ms. [E] in payment of the settlement when, in fact, no such payments were made.

(25) That on March 21, 1990, respondent sent his personal check in the amount of $1,224 to the client with a letter of apology.

## Charge II

(26) In March 1987, respondent was retained to settle an automobile accident insurance claim of [F].

(27) In April 1987, the client requested certain documents from her file, which respondent promised to deliver.

(28) Respondent, despite written and telephone requests, failed to return the documents as of October 19, 1988.

## Charge III

(29) In June 1987, respondent was retained by [G] to represent her in a personal injury claim resulting from an automobile accident. Respondent was given the first-party benefit application and medical bills for filing the claim.

(30) In November 1987, [H] Insurance Company notified the client by letter that no application for benefits had been received, and said letter was forwarded to respondent.

(31) After repeated requests, respondent notified the client in December 1987 that he had mistakenly forwarded the claim to the other driver's insurer, whereupon the client notified respondent by letter dated December 8, 1987, that he was terminated, and she requested her file be sent to her new attorney.

(32) Despite repeated requests, respondent did not forward the file, and in February 1988, Ms. [G] obtained the file by visiting respondent's office and picking it up personally.

## Charge IV

(33) In August 1985, [I] retained respondent to represent her with regard to a charge she had filed with the [J] alleging race and sex discrimination. The charge was initially filed November 18, 1983, by other counsel.

(34) On May 30, 1986, respondent withdrew Ms. [I's] charge from the [J] after advising her that it would be more advantageous to file the matter in federal court.

(35) Respondent took no further action with regard to the matter from May 30, 1986, until January 6, 1988, when respondent was informed that Ms. [I] had retained other counsel and requested that the file be forwarded.

(36) Respondent was requested in writing on January 25, February 12 and October 7, 1988, to relinquish the file to Ms. [I's] new attorney without result.

(37) On November 3, 1988, respondent delivered the file to Ms. [I].

## C. *Prior Disciplinary Action*

(38) That respondent was the subject of disciplinary proceedings at No. 6 D.B. 88, which involved three similar rules violations and resulted in a private reprimand being ordered by the Disciplinary Board on January 15, 1988. Said reprimand was administered on March 10, 1988.

(39) That respondent began treatment in June 1989 with Dr. [K], a board-certified psychiatrist practicing in [ ], Pennsylvania. He was initially scheduled for weekly visits, which were sporadic for the first three months, but which have been on a regular weekly basis for the past six months. His condition has been diagnosed as a severe depressive disorder, which is being treated by psychotherapy and an anti-depressant medication called Prozac, which he takes daily.

(40) Dr. [K] found that respondent suffered from sleep disturbance, loss of interest in activities, feelings of helplessness, guilt, decrease of energy, decrease in concentration, slowness of speech and suicidal ideation. It is the doctor's opinion that his condition has improved and if the respondent continued therapy and medication, he can function as a professional.

## CONCLUSIONS OF LAW

Respondent, by virtue of his aforementioned misconduct, violated the following Disciplinary Rules and Rules of Professional Conduct:

(a) D.R. 1-102(A)(4)— which prohibits an attorney from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation;

(b) D.R. 1-102(A)(6)—which prohibits an attorney from dealing in conduct that adversely reflects on his fitness to practice law;

(c) D.R. 6-101(A)(3)—which prohibits an attorney from neglecting a legal matter entrusted to him;

(d) D.R. 7-101(A)(1)—which prohibits an attorney from intentionally failing to seek the lawful objectives of a client through reasonably available means;

(e) D.R. 7-101(A)(2)—which prohibits an attorney from intentionally failing to carry out a contract of employment entered into with a client for professional services;

(f) D.R. 7-101(A)(3)—which prohibits an attorney from intentionally prejudicing or damaging a client during the course of the professional relationship;

(g) D.R. 9-102(B)(4)—which requires an attorney to promptly pay or deliver to a client as requested by the client the funds, securities or other properties in

the possession of the lawyer which the client is entitled to receive;

(h) RPC 1.3—which requires an attorney to act with reasonable diligence and promptness in representing a client; and

(i) RPC 1.15(b)—which requires an attorney to promptly deliver to the client property that the client is entitled to receive.

## DISCUSSION

The board concurs with the hearing committee's determination that respondent's multiple violations of his professional duties warrant public discipline. By repeatedly failing to represent his clients with reasonable diligence and competence, he had prejudiced their rights and undermined the public trust. It is our responsibility to protect the public from unfit practitioners and to preserve public confidence in the integrity of the bar. *Office of Disciplinary Counsel v. Stern,* 515 Pa. 68, 526 A.2d 1180 (1987).

The largely undisputed record speaks for itself with respect to respondent's course of professional misconduct. It has been characterized by numerous incidents of procrastination, neglect, delay and misrepresentation.

### A. *Respondent's Misconduct in the [A]* *(No. 71 D.B. 89) and [D] Inc.* *(No. 25 D.B. 89, Charge I) Matters*

In both instances, respondent was retained for debt collection through an attorney listing agency, [L]. In the [A] matter, respondent was referred by [L] to the [A], a collection agency, and subsequently represented [A's] client, [B]. After respondent filed

and served a complaint on the debtors, a hearing was set on the matter. Respondent, however, took no further action on behalf of his client, despite the existence of a contract to furnish professional services and the availability of a legal remedy.

Respondent falsely represented to [L] that he had made status reports to [A] and had rescheduled the hearing, when in fact, he had not. These misrepresentations, coupled with his frequent neglect, violated D.R. 1-102(A)(4), D.R. 6-101(A)(3), D.R. 7-101(A)(2) and D.R. 7-101(A)(3). Taken together, respondent's conduct adversely reflects on his practice of law and violates D.R. 1-102(A)(6).

[L] referred respondent to another client in the [D] matter. There, too, respondent filed and served a complaint on the debtor and then took no further action, in violation of D.R. 6-101(A)(3), D.R. 7-101(A)(2), and D.R. 7-101(A)(3). Although respondent scheduled a hearing, he failed to appear. As a result, the complaint was dismissed with prejudice, in violation of D.R. 7-101(A)(3). Once again, in an attempt to conceal his neglect, respondent falsely represented that he had taken action on the case, advising [L] and [D] that he had obtained a default judgment and had received settlement payments. These actions reveal a web of deception which violates D.R. 1-102(A)(4) and demonstrates a lack of fitness to practice law, in violation of D.R. 1-102(A)(6).

B. *Respondent's Misconduct in Regard to [F], [G] and [I] (No. 25 D.B. 89)*

The above allegations of misconduct also involve respondent's continuing neglect of client matters. Although Ms. [F] retained respondent in spring 1987

to represent her in an automobile insurance claim, respondent did nothing on her behalf for one and one-half years. We do not find that respondent's inaction throughout this period of time during which he claimed to represent Ms. [F], violated D.R. 1-102(A)(6), D.R. 6-101(A)(3), D.R. 7-101(A)(1) or D.R. 7-101(A)(2). On the record here, the mere passage of time, without proof of specific items neglected, does not establish neglect or intentional prejudice to the lawful objectives of his client. Respondent's failure to return Ms. [F's] prescription receipts and wage loss documents, does however, violate D.R. 9-102(B)(4) and RPC 1.15(b).

In the [G] claim, respondent prejudiced his client's rights by failing to properly apply for benefits and by repeatedly failing to respond to his client's inquiries, in violation of D.R. 6-101(A)(3), D.R. 7-101(A)(1) and D.R. 7-101(A)(2). Here, too, respondent failed to promptly deliver client property to Ms. [G] or to Attorney [M], her new counsel, in violation of D.R. 9-102(B)(4).

Finally, in the [I] matter, respondent agreed to represent a client, but took negligible action. In this instance, he initially withdrew his client's [J] complaint and advised her that her case would be better pursued in federal court. Then, he took no further action, and ultimately refused to surrender his client's property upon her request. Despite repeated inquiries from [I], and subsequently from her new attorney, respondent did nothing to resolve [I's] discrimination claim, and would not surrender her file, even upon receipt of a power of attorney. Respondent, therefore, violated D.R. 1-102(A)(6), D.R. 6-101(A)(3), D.R. 7-101(A)(1), D.R. 7-101(A)(2), D.R. 9-102(B)(4), RPC 1.3 and RPC 1.15(b).

In an attempt to mitigate discipline, respondent offers psychiatric testimony, as well as his own narrative, to establish that he suffers from severe mental depression. By so doing, respondent seeks to come within the standard set by the Pennsylvania Supreme Court for consideration of mental illness as a mitigating factor in imposing disciplinary sanctions. *Office of Disciplinary Counsel v. Braun,* 520 Pa. 157, 553 A.2d 894 (1989). Respondent, however, fails to satisfy the *Braun* test, which requires that the medical testimony support the finding of a causal connection between the mental dysfunction and the attorneys's misconduct.

Respondent produced the testimony of his psychiatrist, Dr. [K], in the form of a deposition. Dr. [K] has been treating respondent weekly since June 1989, for severe depression for which he has prescribed an anti-depressant medication, Prozac. Although Dr. [K] attested to the existence of respondent's mental disorder, he would not testify to a specific causal connection between respondent's depression and the misconduct which is at issue in these proceedings. According to Dr. [K], severe depression, such as that experienced by respondent, generally can interfere with cognitive functioning, especially memory concentration and planning. Nevertheless, he declined to find the requisite nexus in this instance:

"*Q:* And you're not testifying here today that any untruths that may have been told by [respondent] in the past was definitely caused by depression.

"*A:* Yes. I cannot be that precise in the matter."

Dr. [K's] testimony was limited to describing respondent's condition since June 1989, and speculating as to what types of impairment might be

experienced by a person suffering from a major depressive disorder. This medical testimony does not meet *Braun's* threshold issue of causation and, therefore, cannot be considered in mitigation of his admitted egregious misconduct.

In ascertaining the appropriate discipline to be imposed, we must give consideration to any aggravating or mitigating circumstances relating to the offense at issue, relevant to his fitness to practice law, and incident to these disciplinary proceedings.

We note that respondent has acknowledged in extensive stipulations the factual basis of these proceedings. He has, however, not produced any evidence or character witnesses that justify mitigation. Nor can he blame his misconduct on inexperience in the practice of law, since he had gone from practice to practice and from office to office leaving behind a wake of neglect and confusion. Furthermore, respondent cannot point to an exemplary prior professional record; in fact, his prior conduct resulted in a private reprimand[2] for conduct involving three similar rules violations. In addition, although respondent made restitution to [D] Inc. in the amount of settlement less attorney's fees, this check was not sent in a timely fashion and predated respondent's hearing by only two days. Finally, respondent has displayed the same indifference for these disciplinary proceedings as he has on numerous occasions shown his clients and their legal matters. Although the board recognizes that respondent suffers from personal and emotional problems, we must carefully consider his prior disciplinary record, his recurrent pattern of misconduct, his

_____

2. The private reprimand was administered on March 10, 1988.

multiple offenses, his substantial experience in the practice of law and his continuing disregard of his clients, the court and these proceedings. In light, therefore, of the above factors and the number of Disciplinary Rules and Rules of Professional Responsibility which have been violated, we conclude that a two-year suspension from the practice of law is necessary to protect the public interest and maintain the integrity of the bar.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent [ ] be suspended from the practice of law for a period of two years.

It is further recommended that the court direct that respondent pay all the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g), Pa.R.D.E.

Mr. Brown recused himself. Messrs. Tumolo and Gilardi did not participate in the adjudication.

## ORDER

And now, August 21, 1991, upon consideration of the report and recommendations of the Disciplinary Board dated February 4, 1991, it is hereby ordered that [respondent], be and he is suspended from the bar of this Commonwealth for a period of two years and he shall comply with all the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Papadakos did not participate in this matter.